## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### Case No. 9:24cv81046-Civ-

TMCT PLLC,

      **Plaintiff**

v.

**PAUL ANDREW WRIGHT, ETERNA
PRIVATE CLIENTS EUROPE DAC, and
WRIGHT PRIVATE OFFICE DAC,**

      **Defendants.**

_____/

### COMPLAINT AND JURY DEMAND

Plaintiff TMCT PLLC d/b/a Thompson PLLC ("Firm"), by their undersigned attorneys, for its Complaint against defendants, PAUL ANDREW WRIGHT, a resident of the Republic of Ireland ("**Wright**"), ETERNA PRIVATE CLIENTS DESIGNATED ACTIVITY COMPANY, a company registered to do business in the Republic of Ireland ("**Eterna**"), and WRIGHT PRIVATE OFFICE DESIGNATED ACTIVITY COMPANY, a company registered to do business in the Republic of Ireland ("**WPO**" or collectively with Eterna "the **Wright Defendants**"), allege as follows:

### Introduction

1.    This is an action for fraud, alter ego, and successor liability based on defendants' wrongful inducement of plaintiff to commit time and monies to defendants and defendants' wrongful refusal to return plaintiff's funds or compensate plaintiff for services.

2.    Defendant Wright solicited services from the Plaintiff in Palm Beach County, Florida

THOMPSON PLLC

and London, United Kingdom. Plaintiff agreed to provide services to Defendant Wright, Eterna, and WPO's predecessor company, Wright Family Office Ltd ("WFO") as well as loan funds for the salaries of Defendant Wright's employees. When the Defendants defaulted under the contracts, plaintiff made a formal demand for the payment of services rendered as well as repayment on the loan for the salaries of Defendant's employees, which was met by Defendant Wright's assurances that the invoices would be paid. During these delays, Defendant Wright absconded from his duties towards his companies, allowed them to go defunct, and created a new entity WPO to continue engaging in his pattern of deception. Defendant Wright further fraudulently transferred assets in attempt to place them outside the reach of creditors.

3.     In the instant action, plaintiff pursues Defendant Wright, his alter ego company, Eterna, and successor entity, WPO for the underlying fraud that Defendant Wright committed on Plaintiff by entering into contracts for services and obtaining a loan from Plaintiff for the payment of his employee salaries when Defendant Wright had no intention and no ability to perform.

## Subject Matter Jurisdiction and Venue

4.     This Court has jurisdiction pursuant to 7 U.S.C. §25(c), 28 U.S.C. §§1332(a), and 1367(a).

5.     Venue is proper before this Court pursuant to 7 U.S.C. §25(c) because the conduct at issue occurred in substantial part, and defendants transact business, in this judicial district and pursuant to 28 U.S.C. §1391(b), as the acts and omissions giving rise to the claims occurred in this judicial district and Defendants consented to venue in this judicial district.

## Parties and Personal Jurisdiction

6.     Plaintiff TMCT PLLC d/b/a Thompson PLLC is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

THOMPSON PLLC

7.      Defendant  Wright is a resident of the Republic of Ireland, with his primary residence at 10 Leinster Wood South, Carton House, Maynooth, Kildare, Ireland, and does business in Palm Beach County, Florida and is committing or has committed breaches of contract and wrongdoing in Palm Beach County and elsewhere in the United States. Wright is the founder, principal, officer, director, agent, owner, and/or employee of the Wright Entities, including but not limited to Defendant Eterna, Defendant WPO, and debtor WFO.

8.      Defendant WPO is a designated activity company limited by shares, registered in the Republic of Ireland and having its principal place of business at Pembroke Hall, Fitzwilliam Square West, Dublin 2, Dublin, DO2 NX53 Ireland.  On information and belief, WPO is doing business in Palm Beach County and is committing wrongdoing in Palm Beach County and elsewhere in the United States.

9.      Defendant Eterna is a designated activity company, limited by shares, registered in the Republic of Ireland and having its principal place of business at Pembroke Hall, Fitzwilliam Square West, Dublin 2, Dublin, DO2 NX53 Ireland.  On information and belief, Eterna is doing business in Palm Beach County and is committing wrongdoing in Palm Beach County and elsewhere in the United States.

10.     The Wright Entities, including but not limited to WFO, Defendant WPO, and Defendant Eterna are controlled, dominated, managed and operated by Defendant Wright.

11.     Defendant Wright is the 100% owner/shareholder of WFO.

12.     Defendant Wright is the 97.5% owner/shareholder of WPO.

13.     Defendant Wright is the 97.5% owner/shareholder of Eterna.

14.     All conditions precedent to the filing of this legal action have occurred, been satisfied, or been waived.

THOMPSON PLLC

3

## General Allegations

15.    Plaintiff's principal was introduced to Defendant Wright by another attorney on September 15, 2020.

16.    In March 2022, Defendant Wright contacted Plaintiff's principal on LinkedIn and asked for a meeting with his team at the offices of WFO. Defendant Wright has since deleted his profile on LinkedIn, and removed traces of his profile on all social media.

17.    On or about May 31, 2022, again on August 30, 2022, and finally on January 9, 2023, Defendant Eterna entered into and executed a contract for services with Plaintiff making a promise to Plaintiff, knowingly and intentionally misrepresenting a material fact to Plaintiff, and/or making a promise of payment to Plaintiff with an undisclosed present intention not to perform under the contract. This representation of fact/promise was known by Defendant Wright to be untrue and was made with the intent to induce Plaintiff's reliance thereon.

18.    On or about March 8, 2022, June 1, 2022, July 21, 2022, August 30, 2022, and January 5, 2022, WFO entered into and executed a contract for services with Plaintiff's wholly owned subsidiary, making a promise to Plaintiff, knowingly and intentionally misrepresenting a material fact to Plaintiff, and/or making a promise of payment to Plaintiff with an undisclosed present intention not to perform under the contract. This representation of fact/promise was known by Defendant Wright to be untrue and was made with the intent to induce Plaintiff's reliance thereon.

19.    Plaintiff's subsidiary has assigned any and all of its claims against Defendant Wright and the Wright Entities to Plaintiff.

20.    In making representations of fact and false promises to Plaintiff, Defendant Wright, through his alter ego companies, sought and intended to create a veneer of respectability and credibility by, among other things, claiming to have an operational investment program conducting

legitimate business, claiming to have a personal wealth with savings in offshore accounts for more than Seventy Million Dollars ($70M); claiming to have earned his wealth by working on missions for the United States Government; claiming to have established multimillion dollar trust accounts for his children in Hong Kong; claiming to be a former member of the Special Air Service (SAS), an elite British military force; claiming that his family had worked for the Royal Family of England; and claiming to have Two Billion ($2B) under asset management.  On information and belief, some or all of these representations were not true.

21.    To induce Plaintiff to act on Defendant's behalf, Defendant Wright misrepresented himself as having no involvement with another registered company in Ireland also named Eterna Private Clients Europe, which suffered negative online reviews, and claimed to engage in legitimate, non-fraudulent investment activities. On information and belief, these representations were untrue.

22.    On information and belief, Defendant Wright's misrepresentations and failures to disclose material facts to Plaintiff were motivated by his desire to gain access to Plaintiff's services and to continue operating a fraudulent scheme concocted to use the proceeds of investor money for his own personal use, and to avoid detection and liability for his wrongful acts.

23.    In reliance on Defendant Wright's foregoing known and intentional fraudulent misrepresentations and omissions of material facts and/or promises made with the undisclosed present intention of not performing them, Plaintiff was induced to provide services and loan monies for the benefit of Defendant Wright.

24.    At all material times relevant to this claim, Plaintiff was contracted by Defendant Wright through his various entities, including Eterna and WFO, to provide professional services pursuant to written engagement agreements with each guaranteeing the indebtedness of the other,

which agreements have been breached, but are not the subject of this particular claim.

25.     Plaintiff provided professional services to Defendant Wright, Defendant Eterna, WFO, and other Wright Entities from September 2022 through February 2023, for which Defendant Wright has failed to make payment.

26.     Multiple demands for payment were made to Defendant Wright and the Wright Entities including but not limited to the dates of January 25, 2023, January 31, 2023, February 1, 2023, February 20, 2023, March 1, 2023, and March 12, 2024, to no avail.

**A Series of Misrepresentations**

27.     Defendant Wright made never-ending excuses as to why payment had been delayed, but claimed payment was on its way in order to induce Plaintiff to continue providing services when he had no intention of making payment.

28.     Defendant Wright falsified a payment transfer slip representing that monies were on the way to pay Plaintiff, which he knew to be untrue.

29.     Defendant Wright falsely claimed to be in the Isle of Man meeting with bank representatives to release funds to pay Plaintiff, which he knew to be untrue.

30.     Defendant Wright falsely claimed to be in hospital having hand surgery in order to seek sympathy for absconding in the course of duty, which status he knew to be untrue.

31.     Defendant Wright attempted to induce Plaintiff to roll the debt owed to Plaintiff into the Eterna investment program, upon information and belief, with the intention of avoiding payment of the indebtedness.

32.     During the months of September 2022 through February 2023, Plaintiff was engaged by Defendant Wright to provide professional services, which included among other duties, oversight of the WFO employees.

33.     The payment of WFO employees and all other WFO liabilities relied wholly on Defendant Wright funding WFO from the business of Defendant Eterna.

34.     Although Defendant Wright incurred significant debt through his company WFO, and employed various staff at WFO, WFO failed to deploy capital to engage in any commercial activity.

35.     Conversely, Defendant Eterna engaged in investment activities, but only ever had two employees: Defendant Wright and John O'Dea.

36.     Upon information and belief, Defendant Wright separated the businesses in this manner with the intention of avoiding payment of indebtedness of WFO as he had done with his predecessor company, Wright Wiseman Stewart Capital Partners Limited ("WWS").

37.     At all material times Defendant Wright has held control over the Wright Defendants through his direct and indirect interests.

38.     In November 2022, Defendant Wright failed to make payroll for his WFO staff, and it caused a huge financial burden to the staff as well as uncertainty in the viability of the company, on behalf of which Defendant Wright had incurred a large amount of debt.

39.     Upon Defendant Wright's pleading, Plaintiff covered the shortfall of the WFO payroll for November 2022.

40.     Upon information and belief, rather than make payroll in November 2022, Defendant Wright redirected Eterna funding in the amount of £550,000 GBP to purchase a house for his son Ethan Wright, located at 5 The Dingle, West Green, RH11 7JD, Crawley, England ("Ethan's House"). Ethan's House constitutes the proceeds of fraud.

41.     Similarly, Defendant Wright failed and/or refused to pay John O'Dea his Eterna salary in November 2022, for reasons he asserted was due to his belief that his colleague was having an

affair with his wife. At the instruction of WFO's CFO, it was WFO that later paid John O'Dea for his November salary.

42.   Again, in late January 2023, Defendant Wright failed to send Eterna funds to make his WFO payroll.

43.   After accruing significant indebtedness in the name of WFO, including payment owed to Plaintiff, Defendant Wright abruptly fled the United Kingdom in the early morning on Wednesday, January 25, 2023, two days before payroll was due.

44.   By correspondence and teleconferences, Defendant Wright continued to make ongoing promises to fund WFO to cover his liabilities within 24 to 48 hours, representing that monies would be coming from the Bank of Ireland, the Isle of Man, or the closing of two Eterna deals.

45.   On the date WFO payroll was due on January 27, 2023, the balance in WFO's accounts was £2,759.64.

46.   To induce Plaintiff to entrust and lend monies to pay the salaries of Defendant Wright's employees, Defendant knowingly and intentionally misrepresented, through correspondence and teleconferences, that payment owed to Plaintiff was on its way, which he knew to be untrue.

47.   To induce Plaintiff to entrust and lend monies to pay the salaries of Defendant Wright's employees, Defendant knowingly and intentionally misrepresented to Plaintiff that there would be a million-dollar bonus paid to Plaintiff once one of his deals was closed, which he knew to be untrue.

48.   On or about January 27, 2023, Plaintiff made a second loan to cover partial payroll for Defendant Wright's employee salaries at WFO.

49.   Plaintiff made a short-term loan to WFO secured by WFO assets with the requisite that it be repaid within three weeks by 17 February 2023. A list of WFO assets is attached as **Exh. 1**.

50. Two of those WFO assets included two expensive BMWs with a total value of approximately $140,000 USD, which Defendant Wright has since transferred outside the reach of creditors in anticipation of his debts.

51. Defendant Wright had fled the country without any commitment to return, still having failed to pay any of his liabilities, including amounts overdue to Plaintiff.

52. As of Friday, January 27, 2023, mid-day, Defendant Wright sent Plaintiff's principal a message, representing that money had indeed been transferred to the WFO Barclays bank account, which representation he knew to be untrue, as follows:

> The money was send direct to Barclays, I paid from BOI. I checked and the value date is today.. faze banks who started to get on my nerves is getting crazy how nothing has been transferred including time because the stupid you diligence. For some reason every transfer we do now has been checked and monitored and questions being asked.     12:10 PM
>
> I will come back to organise another solution. I'm just waiting for Revolut also be unblocked so that I can transmit funds.     12:10 PM

53. No funds arrived from Defendant Wright on January 27, 2023, and in good faith and in reliance on the assurances of Defendant Wright, Plaintiff advanced the loan payment to pay Defendant Wright's staff salaries at approximately 15:01 that day. *See* **Exh. 2**.

54. Defendant Wright then disappeared for the next four days until Tuesday, January 31, 2023, when Plaintiff sent correspondence to Defendant Wright that the WFO CFO had resigned.

55. Defendant Wright swiftly responded; *"Read the WhatsApp I just sent, Cherish."*

56.    To induce Plaintiff to continue working on Defendant Wright's behalf, Defendant Wright sent the following WhatsApp to Plaintiff, which statements he knew to be untrue, as follows:

> *[1/31/23, 3:28:48 PM] Paul Wright:*
> *FYI, **Falcon releasing funds, we will be in receipt***
> ***Thursday** plus Henry is just waiting on settlements into credit*
> *Suisse from Fazriki…*
> *[1/31/23, 4:37:09 PM] Paul Wright: I'm on with my bank Cherish and*
> ***Henry now has the CIS and will be distributing the Fazriki funds***
> *[1/31/23, 4:37:40 PM] Cherish: Thank you for the update*
> *[1/31/23, 4:38:00 PM] Paul Wright: **I'm arranging to forfeit the tax***
> ***and send the funds directly to WFO,***
> *[1/31/23, 5:07:44 PM] Paul Wright: **I'm arranging for salaries***
> *including Dory's back pay **and yours to be remitted, I'm signing off***
> ***on £1.2 mill and will confirm value date and POF. Henry has already***
> ***confirmed we are being paid as he is the paymaster and had received***
> ***instructions.** I've cancelled surgery tomorrow and **flying into IOM***
> ***to ensure funds are remitted without issue** …*
> *[1/31/23, 5:13:10 PM] Cherish: Thank you Paul*

> *See **Exhibit 3***

57.    On February 1, 2023, and February 2, 2023, Defendant Wright wrote Plaintiff's principal that he was in the Isle of Man, meeting with Standard Bank, and that funds had been sent, which representations he knew to be untrue, as follows:

> *[2/1/23, 4:29:17 PM] Paul Wright: **I have completed the process in***
> ***IOM and funds will go tomorrow first thing**. I'm staying over night*
> *to ensure this happens, **a transfer slip will Be sent to you.** Looking for a hotel*
> *now*
> *[2/1/23, 5:07:22 PM] Cherish: Thank you Paul*
> *[2/2/23, 9:10:43 AM] Paul Wright: Heading into the bank now*
> *[2/2/23, 9:19:23 AM] Cherish: Ok*
> *[2/2/23, 12:40:55 PM] Paul Wright: Update you within the hour and*
> ***Will Provide the transfer slip when I have it***
> *[2/2/23, 12:41:12 PM] Cherish: Ok thank you*
> *[2/2/23, 3:21:24 PM] Cherish: Hi Paul, it's almost the end of the*
> *banking day - was there an issue in IOM?*
> *[2/2/23, 3:24:22 PM] Paul Wright: No, **funds have been sent** and will*
> *send a copy of the remittance slip once I receive it on email. I'm*
> *still in discussions regarding other matters but there is no issues*

THOMPSON PLLC

*with IOM*
*[2/2/23, 3:29:09 PM] Cherish: Thank you for the update*
*[2/2/23, 5:14:08 PM] Paul Wright: I'm staying overnight again, I'm a*
*fly back tomorrow.* ***I will send you the transfer slip shortly now***
*[2/2/23, 5:31:33 PM] Cherish: Okay, thank you. No monies arrived*
*today. Dory checked.*
*[2/2/23, 5:33:58 PM] Paul Wright: Coming from the Isle of Man*
*will not arrive same day.. FYI BWC have the $100,000,000 from the*
*Mila trade with $30,000,000 to us, Henry has been dealing directly*
*with the bankers.. confirmed 2 hours ago ..*
*[2/2/23, 5:34:40 PM] Paul Wright:* ***Dory will be in funds tomorrow,***
***I've broken my back to ensure it does***

See <u>Exh. 3</u> *supra.*

58.     No funds arrived on Friday, February 3, 2023.

59.     On Monday, February 6, 2023, Defendant Wright sent Plaintiff a transfer slip from Standard Bank, account ending in x694, which showed that $1,505,015 USD in funds would arrive to WFO's Barclays bank account by Wednesday, February 8, 2023, to reimburse the Plaintiff as well as cover other outstanding debts to the Plaintiff. *See* **<u>Exh. 4</u>**.

60.     Upon information and belief, Defendant Wright fabricated that transfer slip to induce Plaintiff to continue providing legal and professional services for his businesses with the present intention of not paying.

61.     Upon information and belief, Defendant Wright fabricated being in the Isle of Man and meeting with Standard Bank to induce Plaintiff to continue providing legal and professional services for his businesses with the present intention of not paying.

62.     On February 6, 2023, Defendant Wright continued to misrepresent; "*We will be in funds this week so all will be well…*"

63.     Defendant Wright did not submit funds that week, or any week thereafter.

64.     On Monday, February 20, 2023, Plaintiff reminded Defendant Wright that Defendant had yet to reimburse Plaintiff for the monies loaned to cover his staff salaries plus other invoices.

65.    On February 21, 2023, Defendant Wright sent another communication to Plaintiff, promising payment by no later than Friday, February 24, 2023, which representation he knew to be untrue, as follows:

> *I can confirm that salaries will be paid…I can assure you that WFO [Defendant] will continue to trade and is being fully capitalized for it to fulfill its functions to both employees and investors…I will update you all again later today and rest assured WFO will go from strength to strength and these setbacks will be a thing of the past…*

66.    On February 21, 2023, Defendant Wright sent a separate correspondence to Plaintiff promising to make payment: "*Cherish, I'm awaiting your email with what is owed to you, and I will see you repaid and compensated. There was never any question that you wouldn't be.*"

67.    On Friday, February 24, 2023, Defendant Wright sent another email to Plaintiff, committing to make payment on what was owed to Plaintiff: "*…I will be reimbursing you from my local account today and thank you for your kind assistance. Henry at BWC will be remitting today the $10,000,000 so I can take care of the outstanding liabilities…*"

68.    No amounts were ever paid to Plaintiff or to WFO's staff in February 2023, or thereafter.

69.    As Defendant Wright had previously done with WWS before WFO, Defendant Wright had incurred enormous debts, delayed payments for months with endless excuses, faked hospital admissions, exploded with emotional outbursts, allowed the company to become defunct, and then would open the next company, WPO within three months.

**Promises to Pay as a Delay Tactic**

70.    On or about February 21, 2023, Defendant Wright terminated all services of the Plaintiff.

71.   In accordance with the terms of the Loan Agreement, on March 10, 2023, Plaintiff's subsidiary registered a lien over WFO's assets. The charge has not been satisfied.

72.   With the assistance from John Forsyth, WFO's alleged new finance director, Defendant Wright took steps to transfer and/or conceal the WFO assets from Plaintiff and his other creditors.

73.   To induce Plaintiff in delaying any collection efforts against Defendant Wright or the Wright Entities, Defendant Wright continued to send communications promising to pay Plaintiff, which representations he knew to be untrue, as follows:

> *[3/15/23, 9:05:24 PM] Paul Wright: Cherish, I've had a feeling that you've had a loss of a family member or someone close to you and your not feeling to good. Forgive me if I'm wrong... it's just a feeling.. despite what gone in at WFO I hope you are ok.,* **I'm organising sending the money I owe you** *also.. I'm boarding a flight but if you are in need of help then please do let me know.. take care.*

> *See* **Exh. 5**.

74.   On March 10, 2024, Defendant Wright from his new email account at WPO, made another promise to pay Plaintiff:

> *Cherish, I hope this finds you well? I would very much like that we can have a call at some point, to discuss any outstanding liabilities that I have with you. I know that I have much to thank you for* **and I'd like to ensure that I settle with you.** *I do hope you are keeping well? God bless you and I look forward to hearing from you. Paul*

> *See* **Exh. 6.**

75.   To date, Defendant Wright has not paid any sum due towards the indebtedness owed to Plaintiff.

76.   Defendant Wright has never admitted an inability to pay Plaintiff, he just failed and/or refused to do so because he had no intention of performing under the contracts.

THOMPSON PLLC

77.   Defendant Wright has used various tactics to avoid payment to Plaintiff and his other creditors including faking a brain aneurism, pretending to have hand surgery, claiming regular hospital admissions, alleging his best friend was having an affair with his wife, claiming domestic violence within his home, claiming frozen accounts, claiming a tax audit, and alleging his former partners left him the victim, all as preventative of his ability to send payment. On information and belief, some or all of these representations were not true.

### Corporate Malfeasance

78.   Defendant Wright failed to disclose material facts concerning his previous corporate malfeasance. For example, Defendant Wright concealed that almost all of his previous companies had been dissolved for insolvency, leaving a wake of financial victims in their trail.

79.   Upon information and belief, all Eterna and WFO assets have been transferred to Defendant Wright's new entity, WPO, created in June 2023, just three months after Defendant Wright abandoned his liabilities at WFO.

80.   If Defendant Wright had disclosed his history of corporate malfeasance, his inability to make payments on his debts, and an accurate picture of his financial status, then Plaintiff would not have entrusted and lent funds for the benefit of Defendant Wright, would not have provided services to Defendants and would have earlier commenced legal action against Defendants.

81.   Defendant knowingly and intentionally concealed these facts from Plaintiff so  as to hinder and delay the efforts of Plaintiff to collect the monies owed to Plaintiff.

82.   On information and belief, at various times relevant, Defendant Wright engaged in a series of transactions designed and intending to dissipate assets and place them outside the reach of his creditors.

83.   Defendant Wright has engaged in a pattern of corporate misconduct and creditor

deception for a period of many years.

84.     On information and belief, WPO was formed with an objective, *inter alia*, to fraudulently hinder, delay and prevent Plaintiff from collecting on the monies owed to Plaintiff.

85.     The creation of WPO is indicative of Defendant Wright's fraudulent pattern, upon information and belief, misleading investors that an investment at WPO guarantees a 100% return within 30 days (www.wrightprivateoffice.co), and to claim credibility and a veneer of respectability falsely insinuates that Defendant Wright is involved in a Yale University Management Course.

### The Pattern of Corporate Abuse

86.     Defendant Wright has exhibited a history of misusing the corporate form for his personal gain.

87.     On information and belief, Defendant Wright created the Wright Entities with the intent to defraud his creditors, fraudulently transfer assets, and for general, improper purposes.

88.     The Wright Entities include but are not limited to the following:

    (i)    WWS (*dissolved by order of the Insolvency and Companies Court on 9/20/23*),

    (ii)    WFO (*dissolved by order of the Insolvency and Companies Court on 1/10/24)*,

    (iii)    WPO (*registered with Companies House Ireland on 6/26/23) **(active)**,*

    (iv)    AraAppaloosa Limited (*defunct as of 6/12/24)*,

    (v)    Brumbies Ltd (*dissolved on 4/2/24*),

    (vi)    Wright Fiddington Ltd (*dissolved on 4/9/24*),

    (vii)    Wright Edith Walk Limited (*dissolved as of 8/4/24)*,

(viii) Wright Capital Enterprises Ltd *(defunct as of 4/27/24)*,

(ix)   Eterna Dark Pool Ltd ("Eterna Dark Pool") *(dissolved on 1/24/24)*,

(x)    Eterna Private Clients Ltd *(dissolved on 2/10/15),*

(xi)   Eterna Private Clients Europe Limited *(dissolved on 4/26/16),* and

(xii)  Eterna *(registered with Companies House Ireland on 3/22/18)* (***active***)

89.    Defendant Wright is the director of all the Wright Entities, and the 100% owner/shareholder of all the Wright Entities with the exception of Eterna and WPO where he is the 97.5% owner/shareholder.

90.    Upon information and belief, Eterna is the successor company of all the predecessor Eterna entities.

91.    WFO was the successor company to WWS.

92.    Defendant WPO is the combined successor company to WFO and Eterna.

93.    Defendant WPO shares the same office address as Defendant Eterna and Defendant Wright.

94.    WPO uses the identical logo from WFO.

95.    The officers and directors of WFO, Eterna, and WPO are substantially the same; Paul Wright, John O'Dea, John Forsyth, James Mabey, and the Trustee for the bonds, Blue Water Capital Ltd.

96.    WFO is Defendant Wright's predecessor in interest to WPO.

97.    WFO and Defendant WPO share almost substantially the same name, the same logo, the same parties, and the same business model.

98.    The main asset of Eterna were the bonds subject to a Private Placement Memorandum ("PPM"), which has been transferred to WPO without consideration.

99.    As of January 31, 2024, Defendant Eterna transferred its bonds to Defendant WPO, which uses the identical PPM to solicit investors, and according to its website "Investment-Guaranteed 100% return in 30 banking Days with Security."

100.   The WPO website also shows that WPO is reselling the Series 3 from those bonds as sold by Eterna.

101.   The PPM asserts the mistruth that "There has not been any governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which the issuer is aware), during a period covering at least the previous 12 months which may have or have had in the recent past significant effects on the Issuer position or profitability."

102.   The WPO PPM lists its insurer as GNMA Asset Backed Fund Series LLC (GNMA), as having a "credit rating of at least Standard & Poor's (S&P) or Fitch Ratings A+ or Moody's Investor Services A1." Upon information and belief, this is a false representation of the newly created Delaware entity's credit rating.

103.   Upon information and belief, Defendants Eterna and WPO may be attempting to lure investors under the false pretense that GNMA is associated to "Ginnie Mae," the Government National Mortgage Association, a government owned corporation of the United States Federal Government within the Department of Housing and Urban Development.

104.   Defendant Eterna was introduced to GNMA and its trustee, GNMA Asset Backed Guaranty Trust through a CPA certified accountant, Andrew Tate. The WPO website lists it is affiliated with a CPA certified accountant, upon information and belief, referring to Andrew Tate.

105.   Andrew Tate introduced Defendant Eterna to a law firm in California, the law offices of Michael Marcus Kessler. The WPO website asserts that investor monies are now taken through a law firm trust account out of California, upon information and belief, referring to Attorney

Michael Marcus Kessler.

106. When sending communications to Michael Marcus Kessler, responses are received from Andrew Tate.

107. Defendant Eterna engaged in commercial activities in the State of Florida, and the WPO PPM lists WPO's legal adviser as located in Miami, Florida, upon information and belief, also engaging in activities in the State of Florida.

### Victims of Defendant Wright's Corporate Abuse

108. On information and belief, the victims from Defendant Wright's fraudulent activities have suffered more than Ten Million Dollars ($10M) in losses.

109. As of 2024, Defendant Wright through his newly created company, Defendant WPO continues to solicit funds from unsuspecting investors.

110. Upon information and belief, Defendant Wright has used monies received by Defendant Eterna for his own personal use.

111. April 23, 2023, correspondence from John Forsyth communicating with another creditor on behalf of Defendant Wright reveals that Defendant Wright has twenty-three (23) separate bank accounts at the Bank of Ireland. *See* **Exh. 7**.

112. Upon information and belief, when money is deposited into the Eterna bank account, Defendant Wright sweeps the Eterna account by transferring hundreds of thousands of euros directly to one of his twenty-three (23) accounts at Bank of Ireland.

113. Upon information and belief, Defendant Wright spends this money on an excessively lavish lifestyle that includes private jets, swanky hotels, dining at expensive restaurants, and fueling his drugs and alcohol habit.

**The Business Associates**

114.   Defendant Wright's current business associates at WPO include John O'Dea, John Forsyth, James Mabey, and Blue Water Capital Ltd. All these business associates held positions at WFO and some at Eterna.

115.   Defendant Wright is listed as the Executive Chairman of WPO; and also acts as the CEO to Eterna and WFO.

116.   John O'Dea is listed as the Executive Deputy Chairman of WPO. John O'Dea is also an employee and minority shareholder of Eterna; worked for WFO, travelling regularly between offices for Eterna and WFO; and worked for WWS, travelling regularly between offices for Eterna and WWS.

117.   James Mabey is listed as the COO for WPO. James Mabey also worked for WFO.

118.   John Forsyth is listed as the CFO at WPO. By March 2023, John Forsyth was claiming to be the finance director for WFO but refused to disclose the source of his compensation. John Forsyth also held a commercial relationship with Eterna.

119.   Bluewater Capital Ltd is the listed trustee for the WPO bonds according to the WPO PPM. Similarly, Bluewater Capital Ltd acted as a trustee for Eterna and WFO.

120.   Upon information and belief, all these business associates of Defendant Wright had knowledge of his corporate malfeasance and are complicit to Defendant Wright's fraudulent activities.

**Fraudulent Transfer to his son, Ethan Wright**

121.   By October 2022, Defendant Wright's liabilities were significantly over $1.5Million.

122.   With the intention to transfer assets to hinder, delay or defraud his creditors, Defendant Wright used £550,000 GBP of Eterna monies to purchase Ethan's House.

123.   Tracing the funds, upon information and belief, Defendant Wright transferred One Million Euros of Eterna monies held in a Swiss bank account to his own personal account, and then transferred £550,000 GBP of those monies to his son's bank account for the purchase of Ethan's House.

124.   Defendant Wright transferred these monies with the full knowledge of present debts exceeding $1.5Million USD, and with the express purpose of putting the funds beyond the reach of creditors.

125.   Before Defendant Wright was evicted from the premises of the WFO offices, Defendant Wright transferred assets to his penthouse apartment of the same location; and before he was evicted from the penthouse apartment, transferred and/or concealed the remaining WFO assets, including the two BMWs, with the express purpose of putting the assets beyond the reach of creditors.

126.   Upon information and belief, Defendant Wright used Ethan's House to conceal assets after his eviction.

**<u>Damages from Defendant Wright's Wrongful Actions</u>**

127.   As a direct, immediate, and proximate result of Defendant Wright's wrongful actions and conduct described above Plaintiff has suffered substantial damages.

128.   As of August 14, 2024, the total amount of indebtedness to Plaintiff is approximately **$221,305**, together with default rate interest, late charges, attorneys' fees and costs as may be appropriate.

129.   The total amount of indebtedness is comprised as follows:

| Invoice # | US Dollars |
|---|---|
| 4026 | $1,075 |
| 4030 | $25,701 |
| 4031 | $25,701 |
| 4034 - loan | $39,264 |
| 4035 | $40,711 |
| 4036 | $9,252 |
| 4042 | $25,701 |
| 4043 | $53,900 |
| **TOTAL** | **$221,305** |

### COUNT I
### (FRAUD)

130.   Plaintiffs re-allege paragraphs 1-129 above.

131.   Defendant Wright has knowingly and intentionally made false statements concerning specific material facts to Plaintiff.

132.   Defendant Wright's material misrepresentations and omissions include, for example, his lack of disclosure of his history of corporate malfeasance, the status of his business operations, the falsification of a payment transfer slip, his intent to make payment to plaintiff, and his misrepresentation of his strategy, plan and intent for the business operations at Eterna and WFO.

133.   Defendant Wright knew or should have known these representations were false when made.

134.   Defendant Wright made promises with the undisclosed present intent of not performing them.

135.   Defendant Wright made these representations, omissions, and promises with the intent to induce Plaintiff to rely on them, to enter into contracts for services and disburse a loan to pay his staff's salaries and to postpone litigation in order to conceal assets.

136.   Plaintiff justifiably relied on Defendant Wright's misrepresentations, omissions and false promises to its detriment by providing services to Defendant and the various Wright Entities

THOMPSON PLLC

and entrusting and loaning funds to the Wright Entities for staff payments.

137.  As a direct and proximate result of Defendant Wright's fraud, Plaintiff has suffered and continues to suffer substantial harm and damages in an amount not less than $221,305, and is entitled to treble damages, punitive damages, interest, attorneys' fees, costs, and other expenses.

WHEREFORE Plaintiff demands judgment against Defendant Wright for compensatory damages, consequential damages, treble damages, punitive damages, interest, attorneys' fees, costs, and other expenses, together with such other and further relief as is just and proper.

## COUNT II
### (ALTER EGO)

138.  Plaintiff re-alleges paragraphs 1-129 above.

139.  Defendant Eterna is the alter ego of Defendant Wright.

140.  Defendant Wright as a shareholder of Eterna dominated and controlled Eterna to such an extent that Eterna's independent existent was in fact non-existent.

141.  Defendant Wright abused the corporate form of Eterna by exercising complete domination and control over the operations, management, legal and financial affairs of Eterna.

142.  Defendant Wright used this domination and control for an improper purpose and to perpetrate a fraud or a wrong against Plaintiff.

143.  Defendant Eterna primarily transacted Defendant Wright's personal business rather than its own corporate business.

144.  The domination and control by shareholder, Defendant Wright proximately caused damages to Plaintiff.

145.  Plaintiff seeks declaratory judgment that Defendant Eterna is the alter ego of Defendant Wright, and that Defendant Wright and Defendant Eterna are thus jointly and severally liable for all debts, obligations, and judgments owing to Plaintiff.

THOMPSON PLLC

WHEREFORE, Plaintiff requests a declaratory judgment against Defendant Wright that Defendant Eterna is his alter ego, and adjudicating Defendant Wright and Defendant Eterna jointly and severally liable to Plaintiff for the debts and liabilities to Plaintiff, together with such other and further relief as is just and proper.

### COUNT III
**(Successor Liability)**

146.  Plaintiff re-alleges paragraphs 1-129 above.

147.  Defendant WPO is a mere continuation of the predecessors WFO and Eterna.

148.  The creation of Defendant WPO is a fraudulent effort by Defendant Wright to avoid the liabilities of the predecessor entities, WFO and Eterna.

149.  Defendant WPO is merely a continuation or reincarnation of the predecessor WFO and Eterna, under a different name, but there is a common identity of officers, directors and owners in the two entities.

150.  The management and personnel of Defendant WPO remains essentially the same as WFO and Eterna, as do the assets and location of the business.

151.  Plaintiff seeks declaratory judgment that Defendant WPO, as the successor entity of WFO and Eterna is liable for the damages caused by WFO and Eterna.

152.  WFO and Eterna are liable to Plaintiff for damages in an amount not less than $221,305 USD, together with attorneys' fees, costs, and other expenses.

WHEREFORE, Plaintiff demands judgment against Defendant WPO for damages, interest, attorneys' fees, costs, and other expenses, together with such other and further relief as is just and proper.

### JURY DEMAND

Plaintiff demands a jury trial of all the issues so triable.

THOMPSON PLLC

Dated: August 28, 2024

Respectfully submitted,

*/s Cherish A. Thompson, Esq.*
Cherish A. Thompson, Esq.
Florida Bar No. 0816221
Email: cherish@tafirm.com
Email: eservice@tafirm.com
THOMPSON PLLC
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: 561.370.7380
Facsimile: 561.516.7083
*Attorneys for Plaintiff*

THOMPSON PLLC