UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-81046-DAMIAN/MATTHEWMAN

TMCT PLLC,

      Plaintiff,

v.

PAUL ANDREW WRIGHT, *et al.*,

      Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AGAINST THE DEFENDANTS [DE 80]

**THIS CAUSE** is before the Court upon an Order of Reference from the Honorable United States District Judge Melissa Damian [DE 81] to enter a Report and Recommendation on Plaintiff TMCT PLLC's ("Plaintiff") Motion for Default Final Judgment Against the Defendants ("Motion") [DE 80]. Defendants, Paul Andrew Wright ("Defendant Wright" or "Wright"), Eterna Private Clients Europe DAC ("Defendant Eterna" or "Eterna"), and Wright Private Office DAC ("Defendant WPO" or "WPO") (collectively, "Defendants"), have not filed a timely response. This matter is ripe for review.

### I.      BACKGROUND

#### A.  *Factual Background*

Plaintiff filed this lawsuit against Defendant Wright, his alter ego company, Eterna, and the successor entity, WPO, for the underlying fraud that Plaintiff alleges Defendant Wright committed on it by entering into contracts for services and obtaining a loan from Plaintiff for the payment of his employees' salaries when Defendant Wright had no intention or ability to perform.

[Amended Complaint ("Am. Compl."), DE 65 ¶ 3]. The Wright Entities, including, but not limited to, Wright Family Office Ltd ("WFO"), Defendant WPO, and Defendant Eterna are controlled, dominated, managed, and operated by Defendant Wright. *Id.* ¶ 11. Defendant Wright is the 100% owner/shareholder of WFO and the 97.5% shareholder of Eterna and WPO. *Id.* ¶¶ 12–14. Plaintiff has suffered damages in the amount of $221,305.00, based on eight unpaid invoices—numbered 4026, 4030, 4031, 4034, 4035, 4036, 4042, 4043. *Id.* ¶¶ 127–29.

## B. *Procedural Background*

Plaintiff filed its Complaint [DE 1] against Defendants on August 28, 2024. Defendants were served with the Complaint by a practicing solicitor in Ireland pursuant to the Hague Convention on November 20, 2024. [DE 5]. On December 2, 2024, Defendants appeared in the case by way of counsel, Cozen O'Connor, and, on December 11, 2024, Defendants filed their Motion to Dismiss the Complaint [DE 11]. Defendants moved for a dismissal of the Complaint on three bases: (1) lack of personal jurisdiction; (2) *forum non conveniens*; and (3) failure to state a claim upon which relief may be granted (a) on Count I of the Complaint on the basis of the independent tort doctrine, and (b) on Counts II and III of the Complaint on the basis that alter ego and successor liability were not independent causes of action. *Id.*

While the Motion to Dismiss was pending, on March 19, 2025, Cozen O'Connor filed a motion to withdraw as Defendants' counsel, citing irreconcilable differences, which motion was granted on April 11, 2025. [DEs 29, 34]. Defendants then retained Rocke McLean Sbar, P.A., as replacement counsel on May 2, 2025, but that firm almost immediately filed a motion to withdraw as Defendants' counsel, also citing irreconcilable differences. [DEs 36, 37, 41]. Upon withdrawal of Defendants' counsel Rocke McLean Sbar, P.A., on May 19, 2025, Eterna and WPO failed to obtain replacement counsel, and Wright failed to advise whether he was proceeding *pro se* or

seeking replacement counsel, as required. *See* DE 46. Thus, upon motion by Plaintiff, the Clerk of Court entered defaults against the Defendants on June 12, 2025. [DEs 52, 53].

Subsequently, on June 13, 2025, the Undersigned entered a Report and Recommendation on Defendants' Motion to Dismiss Plaintiff's Complaint. [DE 54]. The Undersigned recommended that Defendants' motion to dismiss for lack of personal jurisdiction, motion to dismiss under the *forum non conveniens* theory, and motion to dismiss for failure to state a claim based on the independent tort doctrine all be denied. *Id.* The Undersigned found, however, that Counts II and III of the Complaint for Alter Ego and Successor Liability could not be pled as stand-alone causes of action; the Undersigned recommended that "Plaintiff should be permitted to re-plead the allegations related to the alter ego theory in the body of the complaint…[or] alternatively, the District Judge may permit Plaintiff to amend the Complaint by interlineation to resolve this issue." *Id.* at 20, 21. Defendants did not file any objections to the Report and Recommendation.

On July 3, 2025, the Court entered an Order adopting the Undersigned's Report and Recommendation and granted Plaintiff "leave to file an amended complaint shifting the alter ego/successor liability allegations from standalone counts to the body of the complaint, in accordance with the Report." [DE 64]. On July 4, 2025, Plaintiff filed its Amended Complaint against all three Defendants for one count of fraud, shifting the alter ego/successor liability allegations from standalone counts to the body of the complaint. [DE 65]. The Amended Complaint seeks damages from the Defendants jointly and severally in an amount not less than $221,305.00, together with punitive damages, interest, attorney's fees, and costs, as well as such other and further relief as is just and proper. *Id.*

To ensure clarity of the record and because the Amended Complaint superseded the pleading it amended, the Court vacated the defaults against Defendants on July 21, 2025. [DE 69].

Because the Amended Complaint asserted a new claim against Eterna and WPO, Plaintiff was instructed to re-serve only Eterna and WPO. *Id*. at 4. As demonstrated by Plaintiff's Certificate of Compliance [DE 66], Defendant Wright was served with the Amended Complaint on July 4, 2025. As demonstrated by Plaintiff's Affidavits of Service [DE 75], Defendants Eterna and WPO were re-served in accordance with the Hague Convention at their registered office address in Ireland on August 18, 2025. *See* DEs 75-1, 75-2. Thereafter, upon motion and affidavit from the Plaintiff [DEs 74, 76, 76-1], the Clerk entered defaults against Defendants on September 3, 2025. [DE 77]. Pursuant to the Court's instructions, Plaintiff initiated default proceedings by filing a Notice of Joint Liability [DE 79] and then filed the Motion [DE 80] currently before the Court.

As of the date of this Report and Recommendation, Defendants still have not responded to the Amended Complaint, the Motion, nor any other filings in this case since the withdrawal of their most recent counsel on May 19, 2025. Further, no attorney has made an appearance on Defendants' behalf, and the time to do so has passed. Defendants have also not complied with this Court's prior Order [DE 46], and they have not complied with applicable rules.

In the Motion, Plaintiff alleges that Defendant Wright committed a fraud upon the Plaintiff, by and through his own actions, as well as through Defendants Eterna and WPO, by entering into contracts for services and by obtaining a loan from Plaintiff when Defendant Wright had no intention or ability to perform. Accordingly, Plaintiff seeks entry of a default final judgment for fraud against Defendants jointly and severally for compensatory damages in the amount of $221,305.00, for punitive damages in the amount of $663,915.00, for reasonable attorney's fees in the amount of $84,260.00, and for costs of $2,083.00, as well as post-judgment interest at the current prevailing statutory rate.

## II.    <u>APPLICABLE LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 55 governs default judgments, which are appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (citing Fed. R. Civ. P. 55(a)). But "a defendant's default does not in itself warrant the court entering a default judgment. There must be a sufficient [factual and legal] basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] "The effect of a clerk's default is that all of Plaintiff's well-pleaded allegations are deemed admitted." *Malletier v. Individuals, Bus. Entities, or Unincorporated Ass'ns*, No. 23-61421-CV, 2024 WL 4372102, at *2 (S.D. Fla. Jan. 26, 2024) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).

Once a sufficient basis for liability is established, the court must next assess the damages sought by examining the affidavits submitted. *See, e.g.*, *Svetlick v. Lucius*, No. 08-61525, 2009 WL 1203925, at *1 (S.D. Fla. May 1, 2009); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). A court may award "without a hearing if the amount claimed is a liquidated sum or one capable of mathematical calculation, so long as all essential evidence is

---

[1] Adopted by the Eleventh Circuit in *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981).

a matter of record." *Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231–32 n.13 (11th Cir. 2005) (cleaned up)). "After ascertaining the appropriate amount of damages, the Court must enter final judgment in that amount." *Cincinnati Ins. Co. v. GC Works, Inc.*, No. 21-cv-21159, 2022 WL 787952, at *4 (S.D. Fla. Feb. 25, 2022), *report and recommendation adopted*, 2022 WL 783285 (S.D. Fla. Mar. 15, 2022).

### III.    <u>DISCUSSION</u>

 "[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Lucius v. Untuckit Fla., LLC*, No. 24-CV-20215, 2024 WL 5681638, at *2 (S.D. Fla. Aug. 26, 2024) (citing *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021)).

#### A.  *Personal Jurisdiction*

The Court has already determined that it has personal jurisdiction over Defendants. [DE 54 at 12–14, DE 64]. There is no reason for the Court to re-consider this issue, as Defendants failed to object to that finding.

#### B.  *Subject Matter Jurisdiction*

Even though Defendants failed to raise the issue of subject matter jurisdiction at any point in this case, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

Here, the Amended Complaint alleges that this Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a). [Am. Compl. ¶ 4]. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigants are "citizens of different States." 28 U.S.C. § 1332(a)(1). This Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

This Court finds that the well-pleaded allegations of the Amended Complaint, as well as the parties' corporate disclosure statements [DEs 13, 16] and the Affidavits on file [DEs 11-1, 12-4, 14-1, 14-2], establish diversity jurisdiction over the claims in this case. Plaintiff claims damages in an amount greater than $75,000, and no party is a citizen of the same state. Defendant Wright is a citizen of the United Kingdom domiciled in the Republic of Ireland. Defendants Eterna and WPO are citizens of the Republic of Ireland. Plaintiff is a Florida professional limited liability company with its principal place of business in Palm Beach County, Florida, and its sole member is a citizen of the State of Florida. Because diversity jurisdiction exists, this Court has subject matter jurisdiction over Plaintiff's claim.

## C.  *Service of Process*

A ruling on service of process is essential to ensuring a valid and enforceable judgment because "where service of process is insufficient, the court has no power to render judgment, and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). Here, the Court finds that the Affidavits of Service filed in this case [DEs 5, 75-1, 75-2] demonstrate that service of process was properly effectuated over the Defendants pursuant to Federal Rule of Civil Procedure 4(f)(1) by an internationally agreed means of service authorized by the Hague

Convention. The Court also notes that, in the past, Defendants were represented by counsel and filed motions in this case. They were clearly aware of the case and failed to file any motions to quash service.

### D.   *Liability*

Next, the Court considers whether Plaintiff has stated a claim for fraud against the Defendants in the Amended Complaint sufficient to withstand a motion to dismiss.

"To establish common law fraud, a plaintiff must show '(1) a false statement or misrepresentation of material fact; (2) the representor's knowledge at the time [that] the misrepresentation is made that the statement is false; (3) an intention that the misrepresentation induce another to act; (4) action in justifiable reliable on the representation; and (5) resulting damage or injury.'" *Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV, 2022 WL 820377, at *3 (S.D. Fla. Jan. 20, 2022) (quoting *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000)), *report and recommendation adopted*, 2022 WL 2817961 (S.D. Fla. July 19, 2022)).

"If fraud is perpetrated which induces someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available." *New York Packaging II LLC v. Priv. D Cap. Grp. Corp.*, No. 22-20276-CIV, 2023 WL 2306690, at *11 (S.D. Fla. Mar. 1, 2023) (citing *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. 5th DCA 1998)). "Fraudulent inducement is the inducement to enter a contract by false statements. The legal elements of fraudulent inducement are: (1) false statement of material fact; (2) the maker of the statement knew or should have known of the statement's falsity; (3) the maker intended to induce the claimant's reliance on the statement; (4) the claimant relied on the statement to its detriment." *NJC Guide Serv., LLC v. Sonic Boatworks, LLC*, No. 23-14110-CIV, 2023 WL

6962829, at \*3 (S.D. Fla. Oct. 5, 2023), *report and recommendation adopted,* No. 23-14110-CIV, 2023 WL 6958676 (S.D. Fla. Oct. 20, 2023) (citing *Rose v. ADT Sec. Services, Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008)).

### *(1) Defendant Wright*

The Court previously ruled that Plaintiff's claim for fraud against Defendant Wright was sufficient to withstand a motion to dismiss. [DEs 54, 64]. Here, the Amended Complaint also alleges a multitude of misrepresentations that support a fraudulent inducement theory as to Defendant Wright. *See, e.g.*, DE 1 ¶¶ 17, 18, 20, 21, 22, 23, 27, 28, 29, 31. Thus, as argued by Plaintiff, the principle of res judicata applies. Further, the Court again finds that the Amended Complaint adequately alleges a claim for fraudulent inducement with the required specificity.

### *(2) Corporate Defendants*

As further analyzed below, the Amended Complaint contains allegations against Defendants Eterna and WPO based on alter ego and successor liability allegations. The Court finds that the Amended Complaint alleges a multitude of misrepresentations supporting a fraudulent inducement claim against the corporate Defendants as well. *See, e.g.*, *Id.* ¶¶ 17, 18, 20, 21, 22, 23, 27, 28, 29, 31. Further, Defendants admit these allegations by way of their defaults. Taken as true, the well-pleaded allegations of the Amended Complaint establish that Defendants perpetrated a fraud upon Plaintiff when making promises to Plaintiff with the present intention not to perform them at the time the promises were made. The Court finds that the remedies attendant to fraud are available to Plaintiff.

### (3)  Alter Ego

"[A]lter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-CV-61436, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010). Florida law requires a showing that:

> (1) the shareholder [Wright] dominated and controlled the corporation [Eterna] to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders [Wright] were in fact alter egos of the corporation [Eterna]; (2) the corporate form [Eterna] must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form [Eterna] caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

In the Amended Complaint, Plaintiff alleges—and Defendants admit by way of their defaults—that Defendant Wright dominated and controlled Eterna to such an extent that the company's independent existence was in fact non-existent. The Amended Complaint specifically alleges the following: Defendant Wright is the 97.5% owner/shareholder of Eterna; Eterna only ever had two employees, Paul Wright and John O'Dea; and Eterna was used exclusively by Defendant Wright to fund the Wright Entity WFO to incur millions in debt. [Am. Compl. ¶¶ 14, 33, 35]. The Amended Complaint further alleges Defendant Wright redirected £550,000 of Eterna funds to purchase a house for his son, but he refused to pay Plaintiff or his employees' salaries. *Id*. ¶¶ 40–42, 121–26. At all material times, Defendant Wright used Eterna monies for his own personal use, sweeping the Eterna bank account by transferring hundreds of thousands of euros directly to one of his twenty-three (23) bank accounts at the Bank of Ireland and spending the money on an excessively lavish lifestyle that included private jets, swanky hotels, expensive restaurants, and a drug and alcohol habit. *Id*. ¶¶ 110–13.

Plaintiff alleges—and Defendants admit by way of their defaults—that the corporate form of Eterna was used for a fraudulent and improper purpose and that fraudulent and improper use of

the corporate form caused damages to Plaintiff. *Id*. ¶¶ 127–29. The Amended Complaint alleges—and Defendants admit by way of their defaults—that Defendant Wright created Eterna, including four separate Eterna entities, with the intent to defraud his creditors, fraudulently transfer assets, and for general, improper purposes; and that Defendant Wright used Eterna to perpetrate a fraud against Plaintiff by inducing Plaintiff to enter into no less than five contracts for services, making a promise to Plaintiff, knowingly and intentionally misrepresenting material facts to Plaintiff, and making a promise of payment to Plaintiff with the undisclosed present intention not to perform and made with the intent to induce Plaintiff's reliance thereon. *Id*. ¶¶ 17, 87–88.

Taken as true, the well-pleaded allegations of the Amended Complaint establish that Defendants Wright and Eterna are mere alter egos. As alter ego has been established, Wright and Eterna are jointly and severally liable for the damages caused to Plaintiff. *Consorcio Koralia Dominicana v. Progroup Int'l Corp.*, No. 23-23378-CIV, 2025 WL 2783816, at *6 (S.D. Fla. Sept. 10, 2025), *report and recommendation adopted,* No. 23-23378-CIV, 2025 WL 2780043 (S.D. Fla. Sept. 30, 2025) ("These allegations, which are taken as true, are sufficient to establish that Progroup was Azpurua's alter ego and that Progroup's corporate veil can be pierced to hold Azpurua personally liable for the judgment entered against Progroup.").

### (4) Successor Liability

"[T]he theory of successor liability merely provides a plaintiff an alternative entity from whom to recover..." *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2011 WL 4345189, at *3 (M.D. Ga. Sept. 15, 2011). "The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008) (citing *Amjad Munim, M.D., P.A. v. Azar,* 648 So.2d 145, 154 (Fla. 4th DCA 1994)).

"Mere continuation occurs when one corporation is absorbed by another, i.e., there is a continuity of the [first] corporation evidenced by such things as the same management, personnel, assets, location, and stockholders. The bottom-line question is whether each entity has run its own race, or whether[] there has been a relay-style passing of the baton from one to the other." *Id.*

In the Amended Complaint, Plaintiff alleges—and Defendants admit by way of their defaults—numerous facts to show Defendant Eterna passed the baton to Defendant WPO with common ownership in management, personnel, assets, location, and shareholders. Am. Compl. ¶¶ 86–100. WPO came into existence just three months after Defendant Wright abandoned WFO with millions in debt. *Id.* ¶ 88. WPO assumed the only asset of Eterna, the bonds subject to the PPM, without payment of any consideration, and started reselling the same series 3 bonds already sold. *Id.* ¶¶ 98–99. WPO shares the same office address as Eterna. *Id.* ¶ 93. WPO shares the same two owners as Eterna with identical share splits, 97.5% to Paul Wright and 2.5% to John O'Dea. *Id.* ¶ 89. WPO shares the identical logo as WFO. *Id.* ¶ 94. WPO shares the same personnel and management as Eterna and WFO, namely Paul Wright, John O'Dea, John Forsyth, James Mabey, and Blue Water Capital Ltd. *Id.* ¶¶ 95, 114–19.

Taken as true, the well-pleaded allegations of the Amended Complaint establish that Defendant WPO is merely a continuation of its predecessor corporation Eterna (and WFO) under a different name. Where successor liability is established, WPO is jointly and severally liable for the damages caused by its predecessor Eterna (and WFO), as another alter ego of Paul Wright.

Having considered the Amended Complaint, the Motion, and the record in this matter, the Court finds that Plaintiff's allegations are sufficient to establish Defendants are jointly and severally liable to Plaintiff for fraud.

### E.  *Damages*

Plaintiff seeks damages in the total amount of $971,563.00, comprised of the following: (i) compensatory damages in the amount of $221,305.00; (ii) taxable costs in the amount of $2,083.00; (iii) punitive damages in the amount of $663,915.00; and (iv) attorney's fees in the amount of $84,260.00. Plaintiff also seeks post-judgment interest to be calculated in accordance with 28 USC § 1961. In support of the requested damages, attorney's fees and costs, Plaintiff has filed: (1) Plaintiff's Affidavit of Sum Certain Due by Defendants [DE 80-1]; (2) Plaintiff's Verified Bill of Costs [DE 80-2], (3) Plaintiff's Affidavit in Support of Punitive Damages [DE 80-3]; and (4) an Affidavit of Attorney's Fees [DE 80-4].

### *(1)  Compensatory Damages*

As discussed above in detail, the Amended Complaint, as well as the record in this matter, provides a sufficient basis to support a finding that Defendants are liable to Plaintiff for the amounts sought for fraud. The Amended Complaint also alleges that, as of August 14, 2024, "the total amount of indebtedness to Plaintiff is approximately $221,305, together with default rate interest, late charges, attorneys' fees and costs as may be appropriate." [Am. Compl. ¶ 128]. It contains a table showing the value of each of the eight (8) invoices at issue. *Id.* ¶ 129. Plaintiff's Affidavit of Sum Certain Due by Defendants [DE 80-1] also attaches correspondence from Thompson PLLC and Thompson & Partners Ltd to Defendant Wright dated August 14, 2024, which lists and describes the different invoices on which Defendant Wright owed. The total of these invoices is $221,305.00. *Id.*

### *(2)  Punitive Damages*

Plaintiff is seeking punitive damages in the amount of $663,915.00. In the Motion, Plaintiff cites as her basis for claiming punitive damages section 768.72, Florida Statutes. Plaintiff has also

filed an Affidavit in Support of Punitive Damages [DE 80-3]. According to Plaintiff's Motion, "the Amended Complaint, the record in this matter, as well as Plaintiff's affidavits show Defendants' actions were intentional and egregious and that Defendant Wright, Eterna, and WPO actively and knowingly participated in fraudulent conduct." [DE 80 at 18]. Plaintiff also argues that "Defendant Wright by and through the use of his alter ego entities has fraudulently caused damages to unsuspecting third parties amounting to approximately $21Million." *Id.* Plaintiff claims that "Defendants' actions were not isolated incidents. They were not limited to a single transaction with Plaintiff nor were they limited to Plaintiff, and they occurred over a period of many years." *Id.* Further, "[a]t all material times, Defendants have refused to recognize the harm caused by their actions; their filings in this case and their self-serving affidavits shifted blame to everyone else." *Id.*

The Affidavit in Support of Punitive Damages further alleges that Defendants have perpetrated frauds for many years, that they have fabricated investment programs and have taken millions of dollars from U.S. investors, and then have been unable to produce any evidence as to the location or use of the monies. [DE 80-3 at 2]. Plaintiff claims to have thousands of pages of evidence, some of which have been filed on the docket, and states that the affected non-parties are willing to sign affidavits. *Id.* According to Plaintiff, "[t]he evidence shows a clearly identifiable pattern of Paul Wright taking monies and/or services through various alter ego entities, faking wire issues, faking illness, promising imminent payment, abandoning the company, placing blame on anyone else, and then disappearing." *Id.* The Affidavit makes several other allegations about Defendants' conduct. *Id.* at 3–10. In sum, Plaintiff argues that

> Defendant Wright's conduct has been intentional and with the requisite scienter for years and years. His conduct has been willful, reckless, outrageous, insulting, devoid of moral turpitude, and fraudulent. Defendant Wright controls all the Wright Entities (Am. Compl. ¶88), including WWS, WFO, Eterna, and WPO, such that the

14

corporate Defendants are also knowingly responsible for the fraud with the requisite scienter, and subject to punitive damages. The evidence suggests that Defendants' conduct has always been motivated by personal financial gain.

*Id.* at 10. Plaintiff has also attached over 240 pages of exhibits to the Affidavit. It also references its Rule 26 Initial Disclosures [DE 28-2] which contains a list of Defendants' financial victims.

Florida Statute § 768.72 states as follows:

A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72, Fla. Stat.

"Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Myers v. Central Fla. Inv., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010). In determining whether a punitive damages award is unconstitutionally excessive, a court should consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1264 (Fla. 2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

Florida's pattern jury instruction 503.2 explains:

15

"Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.
...

In determining the amount of punitive damages, if any, to be assessed, you should consider the following:

(1). the nature, extent and degree of misconduct and the related circumstances, including the following:

(A). whether the wrongful conduct was motivated solely by unreasonable financial gain;

(B). whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by the defendant

(C). whether, at the time of loss, defendant had a specific intent to harm [plaintiff] and the conduct of defendant did in fact harm [plaintiff];

(2). the financial resources of defendant.

However, you may not award an amount that would financially destroy defendants.
Punitive damages are appropriate for a fraudulent misrepresentation claim. *See, e.g.,*

*JPMorgan Chase Bank, N.A. v. P.I.E. Mortg., Inc.*, No. 09-61261-CIV, 2010 WL 11505258, at *6

(S.D. Fla. May 18, 2010), *report and recommendation adopted,* No. 09-61261-CIV, 2010 WL

11506062 (S.D. Fla. June 7, 2010); *E & C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras*

*S.A.S.*, No. 15-21693-CIV, 2015 WL 7720604, at *3 (S.D. Fla. Nov. 30, 2015) ("To recover for

punitive damages in tort as an independent cause of action, in addition to breach of contract, 'an

intentional wrong' must be alleged.") (citing *Nicholas v. Miami Burglar Alarm Co., Inc.*, 339 So.

2d 175 (Fla. 1976)). Finally, "Florida law generally limits a punitive damages award to the greater

of either three times the compensatory damages award or $500,000." *Brecka v. Individuals,*

*Entities, & Unincorporated Assns*, No. 24-60162-CIV, 2025 WL 438196, at *3 (S.D. Fla. Jan. 23,

2025), *report and recommendation adopted sub nom. Brecka v. Individuals, Entities, &*

*Unincorporated Assns*, No. 24-60162-CIV, 2025 WL 435913 (S.D. Fla. Feb. 7, 2025) (citing Fla. Stat. § 768.73(1)(a)).

Further, courts in this Circuit have awarded punitive damages in orders on motions for default judgment. *See, e.g., Brecka*, No. 24-60162-CIV, 2025 WL 438196, at *4 (awarding a punitive damages award that was double the actual damage award to "serve the dual purpose of punishment deterrence while also remaining within the bounds of what is constitutionally allowed"); *Streaminn Hub Inc. v. Gayle*, No. 18-24684-CIV, 2021 WL 603478, at *2 (S.D. Fla. Jan. 27, 2021), *report and recommendation adopted,* No. 18-24684-CIV, 2021 WL 602726 (S.D. Fla. Feb. 16, 2021) (awarding punitive damages in an order granting a motion for default judgment); *Baumann v. Bank of Am., N.A.*, 734 F. App'x 664, 671 (11th Cir. 2018) ("We do not suggest the district court clearly erred by limiting punitive damages to $2,000."); *Handal v. Joseph*, No. 13-20111-CIV, 2014 WL 12860593, at *3 (S.D. Fla. July 18, 2014) (awarding $1,000,000.00 in punitive damages in an order on motion for default judgment); *Campbell v. Humphries*, 353 F. App'x 334, 337–38 (11th Cir. 2009) (affirming the district court's awards of $75,000 in actual damages and $25,000 in an order on a motion for default judgment).

Taking into account all of the well-pled allegations in the Amended Complaint, which are deemed admitted, alongside the Affidavit in Support of Punitive Damages and attachments, the Court first finds that a hearing on punitive damages would not be fruitful. The information within those documents sufficiently proves by clear evidencing evidence that punitive damages should be imposed in this case. The Court further finds that the evidence provided by Plaintiff establishes by clear and convincing evidence that Defendants' conduct has been willful, reckless, intentional, reprehensible, and fraudulent. The evidence additionally shows that Defendants' wrongful conduct was motivated solely by unreasonable financial gain, and Defendants actually knew of the

problematic nature of their conduct, along with the high likelihood of injury resulting to Plaintiff from the conduct. Further, the evidence demonstrates that Defendants had a specific intent to harm Plaintiff, and that Plaintiff was harmed. Defendants have exhibited a pattern of fraudulent practices over a period of many years, and the fraud committed upon Plaintiff was not an isolated incident. It is also likely that Defendants will continue their conduct in the future. Finally, the Court notes that Defendants' conduct in this litigation has been obstructionist and uncooperative. *See* DE 56 at 9–10.

Based on the foregoing, the Undersigned recommends that the District Judge award Plaintiff punitive damages against Defendants in the amount of $663,915.00. This amount is three times the amount of the compensatory damages awarded to Plaintiff.

### *(3) Attorney's Fees*

Plaintiff is seeking attorney's fees in the amount of $84,260.00. In the Motion, Plaintiff argues that its "entitlement to fees is based on the underlying fee agreements at issue in this claim for fraud in the inducement; the Court's powers to sanction parties for non-compliance, and the Defendants' bad faith conduct." [DE 80 at 18-19]. Plaintiff also points out that the Court's May 19, 2025 Order "allowed for sanctions in the event of Defendants' non-compliance, 'which may include, but [were] not limited to, imposition of an award of fees and costs … against Defendants …'" and that "Defendants' non-compliance is shown by the record." *Id.* Plaintiff additionally contends that its "Affidavit in Support of Punitive Damages provides further evidence of Defendants' bad faith conduct regarding this matter." *Id.* According to Plaintiff, "[t]he bad faith exception to the American Rule provides a basis for awarding Plaintiff its attorneys' fees by making whole a prevailing party." *Id.* And, here, "Defendants conducted themselves in bad faith both pre-litigation and during litigation for seeking ongoing delays [DE 43], perjury in affidavits,

noncompliance with court orders, the noncompliance of court instructions, the serving of boiler plate objections to discovery, and the unreasonable refusal to investigate their defenses, or take part in any form of alternative dispute resolution" *Id.* at 19–20.

"In the United States, parties are ordinarily required to bear their own attorney's fees— the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001). "Under this American Rule," courts "follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon*, 532 U.S. at 602 (quotation marks omitted); *see also* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

First, the Court does not find that the underlying engagement agreements [DE 28-3] are a basis for entitlement to attorney's fees here. The sections of the engagement agreements and addendum identified by Plaintiff have no bearing on the situation currently before the Court. In fact, this lawsuit was filed because Defendants fraudulently induced Plaintiff to enter into the engagement agreements and provide services to Defendants without Defendants ever intending to pay monies owed. And, the agreements do not contain any provisions providing for attorney's fees due to a violation of the agreements.

Further, the Court does not find that the May 19, 2025 Order is a basis for the fees currently being sought by Plaintiff. The referenced Order [DE 46] simply states,

**If no counsel enters a formal appearance on behalf of Defendants Eterna Private Clients Europe Designated Activity Company and Wright Private**

19

> **Office Designated Activity Company and Defendant Paul Andrew Wright fails to file a Notice of Intent to Proceed Pro Se form by the time set forth herein, the Court may, based on a motion by Plaintiff, or *sua sponte*, impose sanctions against Defendants, which may include, but is not limited to, imposition of an award of fees and costs, entry of default judgment against Defendants and striking of their pleadings.**

*Id.* at 4. The Court never actually imposed any sanctions, including fees, against Defendants; nor did Plaintiff move for sanctions between the issuance of the Order and filing its Motion.

Finally, the Court does not find it appropriate to award fees as sanctions under the relevant case law. Plaintiff has cited no law that supports its position that the Court can award fees for Defendants' bad faith at the default judgment stage. Further, Plaintiff's Affidavit of Attorney's Fees [80-4] provides no basis for entitlement whatsoever, and the Motion instead directs the Court to the Affidavit in Support of Punitive Damages. Plaintiff appears to be conflating the issues of attorney's fees and punitive damages. In sum, Plaintiff has not met its burden of establishing entitlement to attorney's fees here. The Undersigned recommends that the request for fees be denied.

### *(4)  Costs*

The Court further finds that Plaintiff is entitled to costs here. Plaintiff has filed a Bill of Costs [DE 80-2] seeking $2,083.00. The claimed costs consist of the following: $405.00 for fees of the Clerk; $1,528.35 for fees of service of summons and subpoena; and $149.65 for fees and disbursements for printing. Attached to the Bill of Costs are the invoices supporting the costs sought.

Federal Rule of Civil Procedure 54 states in part, "[u]nless a federal statute, these rules, or a court provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). For purposes of Rule 54(d)(1), a "prevailing party" is the party in whose favor judgment is rendered by the Court. *See Util. Automation 2000, Inc. v. Choctawhatchee*

*Elec. Coop., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002). Here, there is no doubt that Plaintiff is the prevailing party, as evidenced by the Final Judgment entered in favor of Plaintiff and against Defendant. [DE 64].

Next, 20 U.S.C. § 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Pursuant to § 1920, a judge or clerk of any court of the United States may tax costs regarding the following:

(1) Fees of the Clerk and Marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Here, Plaintiff is the prevailing party, and the costs sought are appropriate under the statute. Since Defendants failed to object to the requested costs, the Undersigned recommends awarding Plaintiff $2,083.00 in costs. The Undersigned also recommends that the District Judge award post-judgment interest commencing on the date Final Judgment is entered in accordance with 28 U.S.C. § 1961.

## IV.    CONCLUSION

Having considered the record in this matter, including the pleadings, the evidence submitted by Plaintiff, and the affidavits on record, the Court holds that a hearing on damages is unnecessary and that the requested amounts of compensatory damages, punitive damages, costs, and post-judgment interest are justified. In light of the foregoing, the undersigned United States

Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Default Final Judgment [DE 80] be **GRANTED IN PART AND DENIED IN PART** for the reasons stated in this Report and Recommendation. The Undersigned also RECOMMENDS that the District Judge enter a Judgment in favor of Plaintiff and against Defendants in the amount of $887,303.00 (consisting of $221,305.00 in compensatory damages, $663,915.00 in punitive damages, and $2,083.00 in costs), as well as post-judgment interest at the current prevailing statutory rate. The Undersigned also recommends that the District Judge determine whether it is appropriate to include any of the language in Plaintiff's proposed order pertaining to payment, cooperation, partial satisfaction, change of address/phone, and/or equitable relief. [DE 80-5 at 20–23]. The Undersigned notes that Plaintiff is requesting that the Court retain jurisdiction of this action. *Id.* at 22–23.

## <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Melissa Damian. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

The Clerk of Court is **DIRECTED** to mail a copy of this Report and Recommendation to Defendant Paul Andrew Wright at 10 Leinster Wood South, Carton House, Maynooth, Kildare, W23 N9T7, Republic of Ireland.

The Clerk of Court is also **DIRECTED** to mail a copy of this Report and Recommendation to Defendants Eterna and WPO at Pembroke Hall, Fitzwilliam Square West, Dublin 2, Dublin, DO2 NX53, Republic of Ireland.

Plaintiff's counsel is **DIRECTED** to email a copy of this Report and Recommendation to Defendant Paul Andrew Wright.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 21st day of November 2025.

William Matthewman

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge